CENTER FOR DISABILITY ACCESS
RUSSELL HANDY, ESQ., SBN 195058
PHYL GRACE, ESQ., SBN 171771
DENNIS PRICE, ESQ., SBN 279082
MARY MELTON, ESQ., SBN 164407
MAIL: PO BOX 262490
SAN DIEGO, CA 92196-2490
DELIVERY: 9845 ERMA ROAD, SUITE 300
SAN DIEGO, CA 92131
(858) 375-7385; (888) 422-5191 FAX
PHYLG@POTTERHANDY.COM

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Kenneth W. Jarvis**, <br><br> Plaintiff, <br><br> v. <br><br> **SolarCity Corporation; Home Depot U.S.A., Inc.**; and Does 1-10, <br><br> Defendants. | Case No. <br><br> **Complaint For Damages And Injunctive Relief For Violations Of**: <br><br> 1. Title III of the American's With Disabilities Act, 42 U.S.C. §12182 *et seq.*; <br><br> 2. California's Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*; and <br><br> 3. California's Disabled Persons Act, Cal. Civ. Code § 54.1 *et seq.* |

Plaintiff Kenneth W. Jarvis ("Plaintiff") complains of Defendants SolarCity Corporation; Home Depot U.S.A., Inc.; and Does 1-10 ("Defendants"), and alleges as follows:

Complaint

**INTRODUCTION**

1.     The Americans with Disabilities Act ("ADA") was passed over 2 decades ago with a principal goal of integrating people with disabilities into the country's economic and social life. 42 U.S.C. § 12101(a). Despite this long-standing mandate, Defendants have failed to ensure that individuals with disabilities who use service dogs have full and equal access to the goods, facilities, programs, services and activities they offer to members of the public.

2.     As a result of Defendants' discriminatory acts and omissions as alleged herein, Plaintiff has suffered, and will continue to suffer, damages, and has been, and will continue to be, prevented and deterred from accessing Defendants' goods, facilities, programs, services and activities independently and in a manner equal to individuals without disabilities.

3.     Through this lawsuit, Plaintiff seeks an injunction requiring Defendants to modify their policies and procedures to provide him, and similarly situated persons, "full and equal" access to Defendants' public facilities as required by law.  Plaintiff also seeks damages and reasonable attorneys' fees, costs and litigation expenses for enforcing his civil rights.

**PARTIES**

4.     Plaintiff Kenneth W. Jarvis is, and at all times relevant herein was, a California resident with disabilities. Plaintiff served in the U.S. Army and has been diagnosed with post-traumatic stress disorder ("PTSD") and traumatic brain injury resulting from his service. Plaintiff also suffers from high blood pressure, related to his PTSD.  Plaintiff is, and at all times relevant herein was, an individual with disabilities as that term is defined under the ADA and California law.  42 U.S.C. § 12102; Cal. Gov. Code § 12926.

Complaint

5.      Defendant SolarCity Corporation (hereinafter "SolarCity"), is a Delaware corporation that does business in multiple states throughout the United States of America, including the State of California.  SolarCity is headquartered in San Mateo and may be sued through its registered agent: C T Corporation System, 818 W. 7th St., Ste. 930, Los Angeles, CA 90017.

6.      Defendant Home Depot U.S.A. (hereinafter "Home Depot"), Inc., is a Delaware corporation that does business in multiple states throughout the United States of America, including the State of California. Home Depot is headquartered at the Atlanta Store Support Center in Cobb County of Atlanta, Georgia, and may be sued through its registered agent: Corporation Service Company CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Ste. 150N, Sacramento, CA 95833.

7.      Plaintiff is currently unaware of the true identities of Does 1-10, inclusive, and will seek leave to amend when their true names, capacities, connections, and responsibilities are ascertained.

8.      Plaintiff is informed and believes that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

**JURISDICTION & VENUE**

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 for violations of the ADA.

10.      Pursuant to pendant jurisdiction, attendant and related causes of action arising out of a common nucleus of operative facts are also brought under California law, including, but not limited to the Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq. and the Disabled Persons Act, Cal. Civ. Code § 54.1 et seq., both of which expressly incorporate the ADA. Cal. Civ. Code §§ 51(f), 54.1(d).

11.      Defendants are subject to the personal jurisdiction of this Court because they have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market through the operation and management of multiple retail stores and/or kiosks located in California; they derive substantial revenues from California; and/or they engage in other activities, so as to render the exercise of jurisdiction over Defendants by the California courts consistent with traditional notions of fair play and substantial justice.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and is founded on the following facts: Defendants conduct substantial business in this District, including but not limited to the operation and management of multiple retail stores and/or kiosks located in the County of Los Angeles; Defendants' liability arose in this District; and/or the acts upon which this action is based occurred in this District.

**FACTUAL ALLEGATIONS**

***Defendants***

13.      Home Depot is an American home improvement supplies retailing company that sells tools, construction products, and services.

4

14.     Home Depot owns, operates and/or leases many big-box format stores across the United States, including a store located at 2600 41st Avenue in the City of Soquel, California (hereinafter "the Store").

15.     SolarCity is the largest solar energy services provider in the United States. SolarCity designs, manufactures, permits, finances, sells, installs, maintains, and monitors solar energy systems and panels for residential, commercial and government applications.

16.     As of May 2016, SolarCity was operating in at least 20 jurisdictions, including California.

17.     Since approximately 2010, SolarCity has been in a contract and partnership with Home Depot pursuant to which SolarCity consultants and/or kiosks are placed in Home Depot retail stores to facilitate the sale of SolarCity goods and services and Home Depot is provided a percentage of the resulting sales.

18.     A SolarCity kiosk owned, operated and/or leased by SolarCity was located at the Store in September 2016.

### *Plaintiff*

19.     Plaintiff uses a service dog to perform work and tasks related to his disabilities.

20.     Plaintiff's service dog has been trained to detect changes in Plaintiff's body chemistry that precede a post-traumatic stress event, and then take the appropriate action, including: (1) engaging in physical contact intended to ground Plaintiff, orient Plaintiff as to time and space and/or regulate Plaintiff's breathing; and/or (2) physically leading Plaintiff away from the stressful situation.

21.    Plaintiff's service dog was one of the first PTSD dogs to be accepted into a veterans' health care program by the Veteran's Administration.

### *Plaintiff's September 3, 2016 Visit to the Store*

22.    On or about September 3, 2016 Plaintiff visited the Store to purchase a dishwasher.

23.    Plaintiff was accompanied to the Store by his service dog.

24.    Plaintiff's service dog was wearing a vest identifying it as a service dog all times during Plaintiff's visit.

25.    Plaintiff's service dog was also wearing an Assistance Dog Identification Tag issued by the County of Santa Cruz pursuant to California Food and Agricultural Code § 30852 identifying it as a service dog all times during Plaintiff's visit.

26.    Plaintiff's service dog was on leash and under Plaintiff's control at all times during Plaintiff's visit.

27.    A SolarCity kiosk was located at the Store, approximately 50 feet from the entrance.

28.    As Plaintiff walked into the Store, a SolarCity salesperson approached him. Plaintiff tried to avoid the salesperson, but the salesperson stepped in front of him, blocking his path of travel.

29.    The SolarCity salesperson told Plaintiff that he could cut Plaintiff's monthly electric bill "in half." Plaintiff expressed disinterest in what the salesperson was trying to sell and politely responded that his bill was already only approximately $30/mo.

30.    The SolarCity salesperson called Plaintiff "a damned liar" and said "no one's bills are that low."

31.   Plaintiff was offended and upset by the SolarCity salesperson's behavior.

32.   Plaintiff felt his blood pressure begin to rise.

33.   Plaintiff's service dog detected the change in Plaintiff's stress level, and began rubbing against Plaintiff's right knee to ground him, keep him from disassociating and prompt him to regulate his breathing.

34.   Plaintiff's service dog also began to lead Plaintiff away from the salesperson and stressful situation.

35.   The SolarCity salesman then dropped to his knees in front of Plaintiff's service dog, blocking the dog's path and ability to lead Plaintiff out of the situation.

36.   The SolarCity salesperson then threw his arms around the neck of Plaintiff's service dog and started rough-housing with her.

37.   Plaintiff's service dog tried to move away from the SolarCity salesperson, but the salesperson would not release her.

38.    Plaintiff politely asked the SolarCity salesperson to release and stop touching his service dog because the service dog was working.

39.   The SolarCity salesperson refused Plaintiff's request and continued to rough-house with Plaintiff's service dog.

40.   The SolarCity salesperson insisted that what he was doing to Plaintiff's service dog was "okay" because he loved dogs.

41.   Plaintiff again asked the SolarCity salesperson to release his service dog, because the dog was working.

42.   The SolarCity salesperson again refused Plaintiff's request, and continued to hold down and rough-house with Plaintiff's service dog.

43.   Again, the SolarCity salesperson insisted that his actions were "okay" because he loved dogs.

44.    Unable to remove himself (or be removed) from the encounter with the SolarCity salesperson, Plaintiff's stress level spiked and he experienced a full-blown PTSD episode, including fear, uncontrollable pounding of his heart, physical pain and mental anguish.

45.    With his PTSD symptoms escalating in intensity, Plaintiff sternly told the SolarCity salesperson to get away from his dog immediately.

46.    The salesperson finally stood up and released Plaintiff's service dog, but continued to insist that what he was doing with the dog was "okay" and commenting that Plaintiff just didn't understand how much he (the salesperson) liked dogs.

47.    By this time, many other customers in the Store were standing around watching the interaction. Plaintiff felt conspicuous and experienced considerable distress and embarrassment.

48.    Once released by the SolarCity salesperson, Plaintiff's service dog immediately led Plaintiff away from the situation and out of the Store. Plaintiff was unable to complete the shopping he had traveled to the Store to complete.

### *Deterrence and Intent to Return*

49.    Plaintiff has been deterred from returning to the Store since the September 3, 2016 incident due to the way he was treated and the SolarCity salesperson's intentional interference with his service dog.

50.    Whereas Plaintiff used to visit the Store on a regular basis, he has only returned to the Store on two occasions since September 3, 2016.  On both occasions he left his service dog in the car and made sure to utilize an entrance that was far away from the SolarCity kiosk.

51.    It caused Plaintiff difficulty and distress to shop in the Store without his service dog. Plaintiff feared he would have a PTSD-related

incident or event without his service dog there to ground and orient him, lead him to safety or otherwise alleviate or mitigate his symptoms.

52.     Plaintiff plans to visit the Store in the future with his service dog. The Store is conveniently located near his home.

53.     Until Defendants' take the steps necessary to ensure that their employees, contractors and/or agents will not discriminate against service dog owners and interfere with their use of service dogs, Plaintiff will continue to be denied full and equal access to Defendants' goods and services, and will suffer ongoing discrimination by being excluded and deterred from patronizing Defendants' facilities.

### *Entitlement to Injunctive Relief*

54.     The nature of Defendants' discrimination constitutes an ongoing violation, and unless enjoined by this Court, will result in ongoing and irreparable injury to Plaintiff.

55.     Plaintiff has no adequate remedy at law because monetary damages, which may compensate for past unlawful conduct, will not afford adequate relief for the harm caused by the continuation of the wrongful conduct of Defendants and the denial of his rights as herein alleged. Accordingly, Plaintiff is entitled to injunctive relief.

### *Entitlement to Declaratory Relief*

56.     An actual controversy has arisen and now exists between the parties concerning their respective rights, duties and obligations under federal and state law. Accordingly, Plaintiff is entitled to declaratory relief.

Complaint

**FIRST CAUSE OF ACTION**

**Title III of the Americans with Disabilities Act**

**42 U.S.C. §12101 *et seq.***

57.    Plaintiff re-pleads the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

58.    Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

59.    Among the "private entities" which are considered "public accommodations" for purposes of this title is "a hardware store, shopping center, or other sales or rental establishment."  42 U.S.C. 12181(7)(E).

60.    Home Depot owns, operates and/or leases the Store.

61.    The Store is a hardware store, shopping center, or a sales establishment.

62.    SolarCity owned, operated and/or leased the SolarCity kiosk located in the Store in September 2016.

63.    The SolarCity kiosk is a sales establishment, and therefore a place of "public accommodation" under Title III of the ADA.

64.    By interfering with Plaintiff's use of his service dog, Defendants have discriminated against Plaintiff on the basis of his disability in violation of Title III of the ADA.  Defendants' discriminatory conduct has violated the ADA in at lease the following ways:

> a. By directly, or through contractual, licensing, or other arrangements, excluding or denying Plaintiff goods, services, facilities, privileges, advantages, accommodations, and/or

opportunities, on the basis of his disability. 42 U.S.C. §
12182(b)(1)(A)(i);

b. By providing Plaintiff goods, services, facilities, privileges,
advantages, and/or accommodations that are not equal to those
afforded non-disabled individuals. 42 U.S.C. §
12182(b)(1)(A)(ii);

c. By failing "to make reasonable modifications in policies,
practices, or procedures, when such modifications are necessary
to afford such goods, services, facilities, privileges, advantages,
or accommodations to individuals with disabilities, unless the
entity can demonstrate that making such modifications would
fundamentally alter the nature of such goods, services, facilities,
privileges, advantages, or accommodations."   42 U.S.C. §
12182(b)(2)(A)(ii); and

d. By failing to modify policies, practices, or procedures to permit
the use of a service animal by an individual with a disability. 28
C.F.R. § 36.302(c)(1).

65.    Pursuant to the remedies, procedures, and rights set forth in 42
U.S.C. § 12188 and 42 U.S.C. § 12205, Plaintiff prays for judgment as set
forth below.

## SECOND CAUSE OF ACTION
## UNRUH CIVIL RIGHTS ACT
### California Civil Code § 51 *et seq.*

66.    Plaintiff re-pleads the allegations contained in each of the
foregoing paragraphs, and incorporates them herein as if separately re-pled.

67.    The Unruh Act Civil Rights Act ("Unruh Act") guarantees that
persons with disabilities are entitled to full and equal accommodations,

advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code § 51(b).

68. The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

69. The Store is a business establishment and, as such, must be operated in compliance with the provisions of the Unruh Act.

70. SolarCity is a business establishment and, as such, must be operated in compliance with the provisions of the Unruh Act.

71. By interfering with Plaintiff's use of his service dog, Defendants have denied, or aided and/or incited the denial of, Plaintiffs' rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered at the Store and SolarCity, violating the Unruh Act.

72. By interfering with Plaintiff's use of his service dog, Defendants have also denied, or aided and/or incited the denial of, Plaintiff's right to equal access arising from the provisions of the ADA, violating the Unruh Act.

73. Defendants' duties under the Unruh Act are mandatory and long-established. Defendants are deemed to have had knowledge of its duties at all times relevant herein; their failure to carry out said duties as alleged herein was willful and knowing and/or the product of deliberate indifference. Treble damages are warranted.

74. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiff prays for judgment as set forth below.

12

**THIRD CAUSE OF ACTION**

**California Disabled Persons Act**

**California Civil Code § 54 *et seq*.**

***(Statutory damages and attorneys' fees only)***

75.     Plaintiff re-pleads the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

76.     The Disabled Persons Act ("CDPA") provides that "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, ... and privileges of all ... places of public accommodation ... and other places to which the general public is invited" Cal. Civ. Code § 54.1(a)(1).

77.     A violation of the ADA is also a violation of the CDPA.  See Cal. Civ. Code, § 54.1(d).

78.     The Store is a public accommodation and place to where the general public is invited. As such, the Store must be operated in compliance with the provisions of the CDPA.

79.     SolarCity is a public accommodation and place to where the general public is invited. As such, SolarCity must be operated in compliance with the provisions of the CDPA.

80.     By interfering with Plaintiff's use of his service dog, Defendants have violated Plaintiff's rights to full and equal access to the Store and SolarCity under the CDPA.

81.     By interfering with Plaintiff's use of his service dog, Defendants have also denied, or aided and/or incited the denial of, Plaintiff's right to equal access arising from the provisions of the ADA, violating the CDPA.

82.     Defendants' duties under the CDPA are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties as alleged, was

willful and knowing and/or the product of deliberate indifference.

83.    Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 54.3(a), Plaintiff prays for statutory damages and attorneys' fees as set forth below.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Issue an injunction pursuant to the ADA and Unruh Act:

    a.  Ordering Defendants to develop and adopt non-discrimination policies;

    b.  Ordering Defendants to develop and adopt policies and practices to ensure that individuals with disabilities who use of a service dogs are not subjected to discrimination;

    c.  Ordering Defendants to train their employees regarding the rights of people with disabilities who use service dogs.

    ***Note***: *the Plaintiff is not invoking or seeking injunctive relief under California Civil Code section 55.*

2.    Award Plaintiff general, compensatory, and statutory damages in an amount within the jurisdiction of this court;

3.    Award Plaintiff attorneys' fees, litigation expenses and costs of suit, as provided by law; and

4.    Award such other and further relief as the Court may deem just and proper.

Dated: May 26, 2017              CENTER FOR DISABILITY ACCESS

By:_____
Russell Handy, Esq.
Attorneys for Plaintiff

Complaint